## Gabriel Winter v. James W. Zacharie.

Defendant having purchased a plantation and slaves at a Sheriff's sale, made under a *fi. fa.*, issued on a judgdment obtained by him against the plaintiff, procured a monition to show cause why the sale should not be homologated. Plaintiff opposed the homologation, and, on the same day, brought suit, in the parish where the land was situated, and not that of defendant's domicil, to recover the land and slaves, with their fruits and revenues, and for damages against the defendant for having ille- gally and forcibly taken possession. The sale having been avoided, on the opposition to the monition, defendant prayed for the dismissal of the action, on the grounds that the main question, of title, had been decided on the monition, and that the plaintiff had no right to cumulate with his petitory action, a personal one against the defendant, for the fruits and revenues, or for damages: *Held*, that notwithstanding his opposition to the monition, plaintiff had a right to commence the action; that, though the question of title was decided on the monition, that as to defendant's lia- bility for the fruits and revenues, was undetermined, and that being a mere incident of the action of revendication, the suit was properly brought in the parish where the property is situated, although the defendant resides in another; and that juris-

diction having been once vested, it could not be divested by a judgment on a part of the matter in controversy. C. P. 153, 154, 162, 163.

A possessor of a plantation and slaves, responsible to the owner for the fruits and revenues, will be bound to account for such a crop as he might have made therefrom, with ordinary good management. The actual production of the plantation, which was proved to have been neglected, is not a just measure of the damages due to the owner.

APPEAL from the District Court of Ascension, *Deblieux*, J.

*M. Taylor*, for the plaintiff.

*Ilsley*, *Nicholls* and *Winchester*, for the appellant.

MORPHY, J. The defendant, Zacharie, having become the purchaser of a sugar plantation, and seventy-one negroes, in the parish of Ascension, sold under an execution issued on a judgment he had obtained against the present plaintiff, took possession of the property on the 6th of March, 1840, and procured from the District Court a monition, calling on all persons to show cause why the Sheriff's sale to him should not be homologated. Winter filed an opposition based on various grounds, which was sustained by the District Court, whose judgment, annulling the Sheriff's sale, was affirmed by this court. See 17 La. 80. On the very day that Winter filed his opposition in the monition case, he brought the present action, to recover from Zacharie the land and slaves thus illegally sold, and to claim of him $15,000 a year for the fruits and revenues gathered by him during his illegal detention, and for the further sum of $10,000, as damages for illegally and forcibly taking possession of his property. No step appears to have been taken in this action until after the final decision of the monition suit, when the defendant appeared and filed an exception, praying for the dismissal of this action, on the grounds that the main question raised in it, to wit, that of title to the land and slaves, had already been settled and decided in the other suit, in which the Sheriff's sale to Zacharie, of the same land and slaves, had been avoided on the opposition of Winter ; that, if this action be maintained so far as regards the question of the title to the land and slaves, the defendant is a resident of the city of New Orleans, where alone he is suable in all personal actions, and that the plaintiff had no right to cumulate with his petitory action, a personal one against the defendant,

Winter v. Zacharie.

whether founded on a claim for damages, or for remuneration for fruits and revenues, or for hire or otherwise, &c. This exception having been overruled, the defendant pleaded the general issue. The case was then tried before a jury, who gave the plaintiff a verdict of $7000. After an ineffectual attempt to have it set aside, judgment was entered accordingly ; whereupon the defendant appealed.

The inferior Judge correctly overruled the exception taken by the defendant. This action is a mixed one, as defined by article 7 of the Code of Practice, in which the claim for the fruits, or their value, is an incident to the main action to recover the property. Notwithstanding Winter's opposition in the monition suit, to prevent the Sheriff's sale from being homologated, he had a right to institute this action against the defendant, who was in the possession and enjoyment of his property. He could not be deprived of this right by that given to the defendant, of having all the defects in his title examined into and cured as to all the world, by the publication of the monition. The question of title being settled in that proceeding, left undecided that relative to the fruits and revenues, which being a mere incident of the action of revendication, was properly brought in the parish where the property is situated, although the defendant resides in a different parish. Jurisdiction being thus rightfully vested, it was not taken away by an adjudication on a part of the matter in controversy. Code of Practice, art. 153, 154, 162, 163.

The appellant complains, that the jury allowed against him excessive and vindictive damages. Were this manifestly the case, we would remand the cause for a new trial, as it is not one in which vindictive damages should, in our opinion, be awarded ; but upon an examination of the evidence, we think with the Judge below, that although the sum allowed is rather large, the jury might well have considered it only as a just remuneration for damages actually suffered. The plaintiff proved, that the preceding year, 1839, the crop of his plantation amounted to one hundred bales of cotton, and from eighty to one hundred hogsheads of sugar. At ordinary prices, such a crop would produce a sum exceeding that allowed by the jury ; and several planters have testified, that with good management, such a plantation, with the

slaves on it, ought to yield much more. The defendant has not rendered any complete account of the actual product of the plantation during the year he had it in his possession. The person he employed as an overseer, has declared, however, that he made only eight or nine hogsheads of sugar, and that the field of cotton, which was nearly destroyed by caterpillars, produced only twenty-five bales. This scanty crop appeared, no doubt, to the jury to have been the result of mis-management and neglect; as the evidence shows, that the plantation was at times abandoned, and the hands employed on another plantation of the defendant's, called the Laroque plantation; that during the grinding season, they remained at the latter place for six weeks; and that more than one-half of the cane belonging to the Winter plantation was taken away to plant on the Laroque plantation. It further appears, that due diligence was not used in grinding the cane left on the place, so that it was much injured by the frost. This conduct of the defendant, or his agents, rendered the value of the fruits and revenues which he actually gathered from the Winter plantation, trifling and of no account. Under such circumstances, the jury appear to have held the defendant responsible for the crop, which he might have made with ordinary good management. The amount they allowed, although perhaps large, may not and does not, we think, include vindictive damages. They were the legitimate judges of the injury sustained by the plaintiff, and we do not feel ourselves authorized to disturb their verdict.

*Judgment affirmed.*

---

SAME CASE—ON A RE-HEARING.

BULLARD J. A re-hearing was granted in this case, on the suggestion that the jury had rendered a verdict for vindictive damages; whereas the plaintiff was entitled simply to indemnity, according to the opinion of this court first pronounced. We have, therefore, given to the whole case an attentive consideration, and have examined the evidence upon which the jury acted, and proceed to give the result of our reflections on the subject:

In the first place, it has great weight, with us, that the Judge who presided at the trial, overruled a motion for a new trial, which was asked for on the ground that the damages were excessive ; expressing, at the same time, his decided opinion that the plaintiff was not entitled to vindictive damages. Although he regarded the damages awarded as high, he did not think them excessive, and clearly unauthorized by the evidence.

In the next place, it may be remarked that it is in some measure the fault of the defendant, if the jury, as well as this court, have not a more definite standard by which to estimate the damages sustained by the plaintiff. If, instead of taking off the slaves and employing them on another plantation, he had employed them on the place, in improving and cultivating it to the best advantage, and had administered it like a prudent father of a family, then the result of his administration would have furnished a fair measure of indemnity. But his management was not of that character. He employed much of the labor of the place on another tract of land, and even took away a part of the plant cane. The jury had, therefore, to ascertain, as well as they could, what might have been made on such a place, with prudent management, not only in crops, but in improvements with a view to future productiveness. It is shown that there were on the place about fifty hands, and that five hundred acres of land were under fence. Such a plantation, with good management, might yield, according to the statement of one witness, from five to ten hogsheads of sugar per hand, besides provisions and plant cane for the following year. It is true the plantation yielded very little under the management of the defendant, during the year he had control of it ; but that result furnishes by no means a just standard by which to estimate the damages due to the plaintiff.

The case was tried by a jury of planters, and their finding satisfied the Judge who presided at the trial ; and we do not consider the damages awarded so clearly excessive, as to authorize us to pronounce that the court erred in refusing to grant a new trial.

It is, therefore, ordered that the judgment first pronounced remain undisturbed.